**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA**

| | | |
|---|---|---|
| SUSAN C. ARNETT, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 1:10-CV-703 |
| | ) | |
| CAROLYN W. COLVIN, | ) | |
| Acting Commissioner of Social | ) | |
| Security,[1] | ) | |
| | ) | |
| Defendant. | ) | |

## <u>MEMORANDUM OPINION AND ORDER</u>

Plaintiff, Susan C. Arnett, brought this action pursuant to Section 205(g) of the Social Security Act, as amended (42 U.S.C. § 405(g)), to obtain judicial review of a final decision of Defendant, the Commissioner of Social Security, denying Plaintiff's claim for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI of the Social Security Act (the "Act"). The Court has before it the certified administrative record and the parties have filed cross-motions for judgment.

## I.    Procedural History

Plaintiff applied for DIB and SSI on July 8, 2008, alleging a disability onset date of January 6, 2005. (Tr. 99-108.)  The applications were denied initially and upon reconsideration. (Tr. 41-61.)  Plaintiff requested a hearing de novo before an Administrative Law Judge ("ALJ"). (Tr. 66-69.)  Present at the hearing, held on March 3, 2010, were Plaintiff and her attorney.

---

[1] Carolyn W. Colvin became the Acting Commissioner of Social Security on February 14, 2013.  Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Carolyn W. Colvin should be substituted for Michael J. Astrue as the Defendant in this suit.   No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

(Tr. 26-40.)  On April 29 2010, the ALJ determined that Plaintiff was not disabled within the meaning of the Act.  (Tr. 9-21.)  On July 21, 2010, the Appeals Council denied Plaintiff's request for review, thereby making the ALJ's determination the Commissioner's final decision for purposes of judicial review.  (Tr. 1-3.)

In making this disability determination, the ALJ made the following findings later adopted by the Commissioner:

1.      [Plaintiff] meets the insured status requirements of the Social Security Act through December 31, 2011.

2.      [Plaintiff] has not engaged in substantial gainful activity since January 6, 2005, the alleged onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*).

3.      [Plaintiff] has the following severe impairments:  bilateral carpal tunnel syndrome; disorders of the muscles, ligaments, fascia; and obesity (20 CFR 404.1520(c) and 416.920(c)).[2]

. . .

4.      [Plaintiff] does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).[3]

. . .

5.      After careful consideration of the entire record, the undersigned finds that [Plaintiff] has the residual functional capacity to perform a wide range of medium work as defined in 20 CFR 404.1567(c) and 416.967(c) in that she can lift and/or carry 50 pounds occasionally and 25 pounds frequently; she can stand and/or walk (with normal breaks) for about 6 hours in an 8-hour workday; she can sit (with normal breaks) for about 6 hours in an 8-hour workday; she can push and/or pull (including operation of hand and/or foot controls); and while no additional postural, visual, communicative or environmental limitations have been identified,

---

[2] The ALJ found Plaintiff's depression non-severe.  (Tr. 15.)

[3] At step three, the ALJ expressly considered the listings contained in Section 1.00 (Musculoskeletal System) of the Listing of Impairments and Plaintiff's obesity in accordance with Social Security Ruling 02-1p, *Evaluation of Obesity*.

2

she can frequently, but not constantly perform handling (gross manipulation) bilaterally.

(Tr. 14-15.)

In light of the findings regarding residual functional capacity ("RFC"), the ALJ determined that Plaintiff could not perform her past relevant work as a bank teller. (Tr. 19.) Using Rule 203.29 of the Medical-Vocational Guidelines as a framework for decision, and after considering Plaintiff's age (43 on her alleged onset date), education (high school diploma), work experience and RFC, the ALJ concluded that "there are jobs that exist in significant numbers in the national economy that [Plaintiff] can perform." (Tr. 19-20 (citing 20 C.F.R. §§ 404.1569, 404.1569(a), 416.969, and 416.969(a)).) Accordingly, the ALJ decided that Plaintiff was not under a "disability," as defined in the Act, at any time from January 6, 2005, through the date of his decision, April 29, 2010. (Tr. 21.)

## II.    Standard of Review

Federal law "authorizes judicial review of the Social Security Commissioner's denial of social security benefits." *Hines v. Barnhart*, 453 F.3d 559, 561 (4th Cir. 2006). However, "the scope of . . . review of [such an administrative] decision . . . is extremely limited." *Frady v. Harris*, 646 F.2d 143, 144 (4th Cir. 1981). "The courts are not to try the case de novo." *Oppenheim v. Finch*, 495 F.2d 396, 397 (4th Cir. 1974). Instead, "a reviewing court must uphold the factual findings of the ALJ [underlying the denial of benefits] if they are supported by substantial evidence and were reached through application of the correct legal standard." *Hines*, 453 F.3d at 561 (internal brackets and quotation marks omitted).

"Substantial evidence means 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Hunter v. Sullivan*, 993 F.2d 31, 34 (4th Cir. 1992) (quoting *Richardson v. Perales*, 402 U.S. 389, 390 (1971)). "In reviewing for substantial evidence, the court should not undertake to re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the [ALJ, as adopted by the Social Security Commissioner]." *Mastro v. Apfel*, 270 F.3d 171, 176 (4th Cir. 2001.) "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the [Social Security Commissioner] (or the ALJ)." *Id.* at 179 (internal quotation marks omitted). "The issue before [the reviewing court], therefore, is not whether [the claimant] is disabled, but whether the ALJ's finding that [the claimant] is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law." *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996).

In confronting the issue so framed, the Court notes that "[a] claimant for disability benefits bears the burden of proving a disability," *Hall v. Harris*, 658 F.2d 260, 264 (4th Cir. 1981), and that, in this context, "disability" means the "'inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months,'" *id.* (quoting 42 U.S.C. § 423(d)(1)(A)).[4] "To regularize the adjudicative process, the Social Security Administration has . . . promulgated . . . detailed regulations incorporating

---

[4] "The Social Security Act comprises two disability benefits programs. The Social Security Disability Insurance Program . . . provides benefits to disabled persons who have contributed to the program while employed. The Supplemental Security Income Program . . . provides benefits to indigent disabled persons. The statutory definitions and the regulations . . . for determining disability governing these two programs are, in all aspects relevant here, substantively identical." *Craig*, 76 F.3d at 589 n.1 (internal citations omitted).

4

longstanding medical-vocational evaluation policies that take into account a claimant's age, education, and work experience in addition to [the claimant's] medical condition." *Hall*, 658 F.2d at 264. "These regulations establish a 'sequential evaluation process' to determine whether a claimant is disabled." *Id.* (internal citations omitted).

This sequential evaluation process ("SEP") has up to five steps: "The claimant (1) must not be engaged in 'substantial gainful activity,' i.e., currently working; and (2) must have a 'severe' impairment that (3) meets or exceeds the 'listings' of specified impairments, or is otherwise incapacitating to the extent that the claimant does not possess the residual functional capacity to (4) perform [the claimant's] past work or (5) any other work." *Albright v. Commissioner of Soc. Sec. Admin.*, 174 F.3d 473, 475 n.2 (4th Cir. 1999). The law concerning these five steps is well-established. *E.g.*, *Mastro*, 270 F.3d at 177-180; *Hall*, 658 F.2d at 264-65; *Hines*, 453 F.3d at 567.

## III.   Assignment of Error

Plaintiff argues that substantial evidence fails to support the Commissioner's findings at step four of the SEP. (Docket Entry 10 at 3-6.) Specifically, she contends that the ALJ failed to properly evaluate the opinions of a treating physician, Dr. William L. Craig, III, and an examining physician, Dr. L. Harold Nabors, because both physicians accorded Plaintiff greater limitations than those expressed by the ALJ's RFC. (*Id.* at 4-6.) Plaintiff argues that from January 2005 through May 2006, Dr. Craig "completed disability statements that included the opinion that Plaintiff should refrain from using either hand in repetitive work," and that repetitive work "implicit[ly]" encompasses both gross and fine motor functioning. (*Id.* at 5; *see also* Tr. 216-23.) Plaintiff contends that Dr. Nabors opined "that Plaintiff's ability 'to pinch, grasp and manipulate

5

[wa]s markedly limited,'" which "directly addresses limitations in fine motor manipulation."
(Docket Entry 10 at 5; *see also* Tr. 292.)   Plaintiff alleges that the ALJ's RFC fails to include any
limitation in fine manipulation, and that it is unclear from the ALJ's decision whether the ALJ
even considered these opinions of Drs. Craig and Nabors.   (Docket Entry 10 at 5-6.)   Finally,
Plaintiff claims that the ALJ's failure to properly discuss these opinions violates Social Security
Ruling 96-8p, *Assessing Residual Functional Capacity in Initial Claims*.   (*Id.* at 6.)   Defendant
contends the ALJ's RFC adequately encompassed the restrictions of Drs. Craig and Nabors and
urges that substantial evidence supports the ALJ's determination that Plaintiff was not disabled.
(Docket Entry 15 at 4-8.)   After careful consideration of the ALJ's decision and the record
evidence, the Court concludes that the ALJ's RFC determination sufficiently encompasses the
opinions of Drs. Craig and Nabors.

 Turning first to Dr. Craig, the Court notes that there is only one treatment note in the record
from Dr. Craig.   (Tr. 215.)   The ALJ discussed this treatment note as follows:

> Physical examination in January 2005 reveals no swelling or deformity in the right
> hand with some tenderness over her scar in the base of her palm; and she has good
> range of motion and good strength in the hand.   Physical examination of her left
> hand shows no swelling or deformity; she has a positive Tinel sign at the wrist; and
> she has decreased sensation over the median nerve distribution.   Dr. William Craig
> with Orthopaedic Specialists of the Carolinas assessed her with status post right
> carpal tunnel release and pillar pain and left carpal tunnel syndrome . . . .

(Tr. 17.)   This is an accurate summary of Dr. Craig's January 3, 2005 treatment record.
(*Compare* Tr. 215 *with* Tr. 17.)   The remainder of Dr. Craig's notes consists of "Disability
Statements" that he prepared for Plaintiff from January 6, 2005, to May 5, 2006, in conjunction
with her then-pending Workers' Compensation claim.   (Tr. 217-23.)   In these "Disability

Statements," Dr. Craig opines that Plaintiff could work "light duty" but could not engage in "repetitive" work with either hand.   (*Id.*)

Assuming it was error for the ALJ to fail to discuss Dr. Craig's opinion regarding repetitive work and to explain the reasons for the weight, if any, he gave to such opinion, such error was harmless and does not warrant a remand.   Even if the Court finds that the ALJ should have fully credited Dr. Craig's repetitive work opinion[5] and included a limitation of no more than frequent fine manipulation (fingering) in Plaintiff's RFC, this would not have materially changed the ALJ's RFC determination.   Social Security Ruling 83-10, *Determining Capability to Do Other Work – The Medical-Vocational Rules of Appendix 2*, instructs that medium work does not entail the fine manipulation and precision use of the fingers, hands, and arms which is often found in sedentary work.   Thus, by finding Plaintiff capable of performing a wide range of medium work, the ALJ's RFC determination does not materially differ from Dr. Craig's opinion that Plaintiff could not do repetitive work, and by extension, repetitive fine manipulation, with her hands.   Under such circumstances, the ALJ's error in failing to discuss Dr. Craig's repetitive work opinion was harmless.   *See Morgan v. Barnhardt*, No. 04-1692, 2005 WL 1870019, at *5 (4th Cir. Aug. 5, 2005) (unpublished) (holding that where treating physician's opinion regarding claimant's ability

---

[5] Dr. Craig's opinion would likely not be entitled to much weight under the treating physician rule.   20 C.F.R. § 404.1527(d); 20 C.F.R. § 416.927(d).   The regulations instruct that one of the factors to be considered when deciding how much weight to accord a treating physician's opinion is the length of the treatment record and frequency of examination.   20 C.F.R. § 404.1527(c)(2)(i); 20 C.F.R. § 416.927(c)(2).   From the record before the Court, Dr. Craig treated Plaintiff once on January 3, 2005, and it does not appear that Dr. Craig examined Plaintiff on a single occasion after the initial January 3, 2005 treatment note in the record.   (Tr. 217-23.)   The brevity of this treatment relationship significantly undercuts the weight to be accorded to Dr. Craig's opinion.   Another factor to be considered is whether the opinion is supported by medically acceptable laboratory and diagnostic findings.   20 C.F.R. § 404.1527(d)(3); 20 C.F.R. § 416.927(d)(3).   Again, because Dr. Craig did not examine Plaintiff after January 3, 2005, none of his "Disability Statements" are supported by *any* contemporaneous, medically acceptable findings.   Under these circumstances, Dr. Craig's repetitive work opinion would likely have been entitled to little weight.

to sit and stand did not "materially contradict" the ALJ's RFC, the ALJ's failure to discuss the opinion was harmless error).

Next, the Court turns to the opinion of Dr. Nabors. Dr. Nabors conducted a consultative examination of Plaintiff on November 29, 2008. (Tr. 292-94.) The ALJ discussed Dr. Nabors' examination in his decision as follows:

> During a consultative evaluation by Howard Nabors, M.D., in November 2008, she reported that she has had both heels injected and has seen a chiropractor. Review of systems shows she has no lower extremity problems except for plantar fasciitis, which occasionally flares up and her hands get worse and then get better, but she complained of numbness and pain in both hands. Upon physical examination, her gait was normal; she was unable to squat and rise, stand on her heels/toes, or tandem walk, which may be due to poor conditioning; her grip strength was diminished bilaterally, but she has no overwhelming motor deficit; she was unable to perform much in the way of dexterous movements of her hands; and the remainder of the examination was unremarkable.

(Tr. 17.) Again, this is an accurate summary of Dr. Nabors' report by the ALJ. (*Compare* Tr. 292-94 *with* Tr. 17.) Plaintiff faults the ALJ for not specifically discussing Dr. Nabors' handwritten notation at the bottom of a range of motion chart completed during the consultative evaluation which reads, "[A]ble [sic] to pinch, grasp [and] manipulate is markedly impaired [secondary] to pain." (Tr. 292.) Plaintiff maintains that this statement amounts to a restriction on Plaintiff's ability to engage in fine manipulation (fingering), which was not addressed by the ALJ's RFC. The Court disagrees for two reasons. First, the ALJ is not required to discuss every single finding in each piece of evidence in the record, but instead may limit his explanation to the weight given "to obviously probative exhibits." *Gordon v. Schweiker*, 725 F.2d 231, 235 (4th Cir. 1984). Dr. Nabors summarized all of his findings in his typed report, and included the observation that Plaintiff was "unable to perform much [in] the way of dexterous movements of

8

her hands." (Tr. 294.) The ALJ specifically discussed this finding in his decision, which the Court finds is not materially different from Dr. Nabors' handwritten notation about pinching, grasping, and manipulating. (Tr. 17.) Second, and more significantly, Dr. Nabors' observation about Plaintiff's ability to perform dexterous movements must be read in the context of his entire report. In his report, Dr. Nabors twice emphasizes that Plaintiff's hand limitations were based entirely on her subjective complaints and were not substantiated by his objective findings. His handwritten notation makes clear that her limitation in pinching, grasping, and manipulating was based upon her reports of "pain." (Tr. 292.) In his typed report, Dr. Nabors remarked, "There is some pain in her hands and some mild numbness in her hands, which is purely subjective." (Tr. 294.) When read in context, the Court is not convinced that Dr. Nabors' report can be construed as a medical opinion that Plaintiff is markedly impaired in her ability to pinch, grasp, and manipulate. The Court finds no error in the ALJ's evaluation of Dr. Nabors' opinion.

**IT IS THEREFORE ORDERED** that the Commissioner's decision finding no disability is affirmed, that Plaintiff's Motion for Summary Judgment (Docket Entry 9) is **DENIED**, that Defendant's Motion for Judgment on the Pleadings (Docket Entry 14) is **GRANTED**, and that this action is dismissed with prejudice.

This the 5th day of September, 2013.

UNITED STATES DISTRICT JUDGE